**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Robert T. SPURLOCK, Jr., Defendant-Appellant.**

No. 86–7082.

United States Court of Appeals, Eleventh Circuit.

March 9, 1987.

Joseph W. Strealy, Schnetzler & Strealy, Oklahoma City, Okl., for defendant-appellant.

J.B. Sessions, U.S. Atty., Ginny S. Granade, Mobile, Ala., for plaintiff-appellee.

Before HILL and HATCHETT, Circuit Judges, and HENDERSON, Senior Circuit Judge.

HATCHETT, Circuit Judge:

In this case, we review the district court's ruling that an improper conversation between a juror and the juror's mother regarding the case the juror was deciding did not prejudice the criminal defendant on trial. We affirm.

In 1980, a grand jury indicted Robert T. Spurlock, the appellant, with other persons, on one count of conspiracy (18 U.S.C. § 371) and two counts of misapplication of bank funds (18 U.S.C. § 656). The jury convicted Spurlock of conspiracy, and the court suspended his sentence, placing him on probation for three years. This court affirmed his conviction. *United States v. Gregory*, 730 F.2d 692 (11th Cir.1984), *cert. denied*, 469 U.S. 1208, 105 S.Ct. 1170, 84 L.Ed.2d 321 (1985).

On March 19, 1985, pursuant to rule 33 of the Federal Rules of Criminal Procedure, Spurlock filed a motion for new trial, based upon newly discovered evidence. The motion stated the following grounds: (1) the jurors read prejudicial newspaper articles during the course of the trial; (2) a juror, David J. Ellison, was "subjected to opinions of a third party" [his mother] as to the guilt or innocence of the defendant [Spurlock]; and (3) a juror, David J. Ellison, "was subjected to outside pressures to change his vote from not guilty to guilty because of fear of losing his job;" and (4) the jurors considered extraneous evidence. After an evidentiary hearing, the district court denied Spurlock's motion for a new trial. The district court determined that Spurlock's failure to object to known jury misconduct constituted a waiver with regards to ground one. Also, Spurlock's failure to timely present this ground in an earlier motion for new trial barred consideration of this matter in this second motion for new trial. As to grounds three and four, the district court ruled that under Fed.R.Evid. 606(b), consideration of these contentions would require an improper inquiry into the jurors' mental processes, and such consideration is precluded as a "statement occurring during the course of the jury's deliberation." *See Martinez v. Food City, Inc.*, 658 F.2d 369 (5th Cir.1981); *United States v. Green*, 523 F.2d 229 (2d Cir.1975), *cert. denied*, 423 U.S. 1074, 96 S.Ct. 858, 47 L.Ed.2d 84 (1976). Consequently, the evidentiary hearing focused on the second ground—Ellison's conversation with his mother.

On March 8, 1982, Ellison was selected as a juror in this case and began his jury service in the federal court at Mobile, Alabama. Between Friday and Monday of the jury's deliberation, Ellison went home to Selma, Alabama. While at home, Ellison and his mother had a conversation relating to the guilt of the Gregorys, Spurlock's co-defendants. Ellison's mother informed him that one of her patients from Wilcox County felt that the Gregorys were guilty and hoped that the jury would find them

guilty. Ellison's mother also stated that she believed the Gregorys were guilty.[1] Ellison testified that his mother "cautioned me to maybe look at this a little closer and see if I couldn't vote to find them guilty." Ellison's mother did, however, caution him to weigh both sides before making a decision.[2] Ellison admitted that his mother was capable of influencing his thinking and that his conversation with his mother "played a part" in changing his original vote of not guilty prior to the weekend to guilty on the following Monday. After the jury verdict, Ellison contacted the Gregorys and the Gregorys' defense lawyers to inform them that he felt the jury verdict was incorrect. Ellison also informed the trial judge of his dissatisfaction with the jury verdict.

Spurlock appeals the district court's denial of his motion for new trial based on Ellison's misconduct. We must determine whether the district court abused its discretion.

### Discussion

The district court correctly ruled on grounds one, three, and four of the motion for new trial. These rulings are not seriously pursued on appeal. On the second ground, the district court held an evidentiary hearing "to inquire into the existence, nature of, and circumstances surrounding the extraneous information concerning juror Ellison's alleged conversation with his mother." Spurlock and the other co-defendants were present at the hearing. The court heard testimony from Ellison and his mother, and all parties were given an opportunity to file briefs.

In *Remmer v. United States*, 347 U.S. 227, 229, 74 S.Ct. 450, 451, 98 L.Ed. 654 (1954), the Supreme Court stated that "any private communication, contact, or tampering, directly or indirectly, with a juror during a trial about the matter pending before the jury is ... presumptively prejudicial...." The government bears a heavy burden of proving that an off-the-record contact with a juror did not affect the jury, and if such burden is not met, a new trial is required. *United States v. Phillips*, 664 F.2d 971 (5th Cir. Unit B 1981). This circuit has held that "when jurors consider extrinsic evidence, a new trial is required if the evidence poses a reasonable possibility of prejudice to the defendant." *United States v. Perkins*, 748 F.2d 1519, 1533 (11th Cir.1984). *See also United States v. Heller*, 785 F.2d 1524 (11th Cir.1986).

In recognizing the degree of prejudice required and the government's burden to establish harmless error, the district court properly noted that "[t]he strength of the government's case, ... has a bearing on the issue of prejudicial error." *United States v. Bassler*, 651 F.2d 600, 603 (8th Cir.1981). After reviewing the evidence presented at the hearing, the district court determined that the evidence supported the jury's verdict of guilty, and Spurlock's "last minute piecemeal effort" to have the verdict set aside was meritless. We agree. The district court correctly concluded that Ellison's mother advised him to consider all sides before making a decision. She im-

---

1. The testimony given at the evidentiary hearing regarding what Ellison's mother told him can be summarized as follows:
   (1) that a patient at the dental clinic where she worked stated, "I hope they find them guilty because they believed they were guilty and everybody in Camden believed they were guilty;"
   (2) that if ten jurors thought the Gregorys were guilty, that Ellison probably could not change their minds;
   (3) that the length of jury service could affect his job; and
   (4) that she thought the defendants were guilty.

2. Ellison's testimony, in relevant portion, regarding that conversation is as follows:
   She said that she wanted—she didn't want to influence me. She said that I want you to make the best decision you can. I know you will, but try to weigh out both sides, don't just—you know, don't just weigh out one side and think about it only that way, try at least to weigh out both sides to see if you think they might be guilty. If you don't, then vote that they're not. If you do, vote that they are, but don't just fight something when you're not—you haven't weighed out both sides.

pressed upon him the seriousness of his task. Ellison well knew before the conversation that some people thought the Gregorys were guilty of committing a crime. The conversation between Ellison and his mother was improper, but not sufficient to constitute reversible error.

Accordingly, we hold that the district court did not abuse its discretion in finding that the conversation between Ellison and his mother was harmless and did not pose a reasonable probability of prejudice to Spurlock. We affirm.

AFFIRMED.