ALTENBERND, Judge.
We affirm the trial court’s order granting the plaintiff a new trial. Although we have reservations concerning several of the reasons for new trial described in the order, at least one of the reasons is adequate and supported by the record.
The jury in this case decided that a Winter Haven police officer negligently shot Waymon D. Allen, a Polk County deputy sheriff. This incident is generally described in an earlier opinion. City of Winter Haven v. Allen, 541 So.2d 128 (Fla. 2d DCA 1989). The jury concluded that Deputy Allen was 90% comparatively negligent, that the incident caused him bodily injuries that did not result in his death, and that the plaintiff’s total damages were $100,000.
After the verdict and the resulting $10,-000 judgment were reported in the local newspaper, the trial judge received telephone calls from two jurors. The trial judge permitted his judicial assistant to handle these calls. She did not interview the jurors, but merely allowed them to report whatever they voluntarily chose to tell her. Both jurors explained that the news report did not accurately reflect their verdict. They explained aspects of the jury’s deliberations and reasoning. The ju *969 dicial assistant prepared a written summary of these reports for the judge. The judge immediately sent copies to trial counsel. As a result, plaintiff’s counsel filed a motion to interview the jurors. The trial court granted this motion and personally conducted the interviews.
Under the guidelines subsequently announced in Baptist Hospital of Miami, Inc. v. Maler, 579 So.2d 97 (Fla.1991), we conclude that the trial court was authorized to grant the jury interview. We note that Maler effectively amended Florida Rule of Civil Procedure 1.431(h) to require that a motion to interview be accompanied by “sworn factual allegations” to support the motion. Maler, 579 So.2d at 100. In this case, the plaintiff did not provide such sworn factual allegations. Since the information was communicated directly to the judicial assistant by the jurors and this motion predates Maler, we will not require retroactive obedience to this procedural aspect of Maler.
It is clear that some of the plaintiff’s reasons for the interviews relate to matters that inhere within the verdict. On the other hand, the jurors revealed in the telephone conversations that they understood the plaintiff was receiving 10% of $600,000, in addition to the amounts set out in their verdict. A prior trial had resulted in a wrongful death verdict of $600,000. The result of the prior trial, of course, had not been disclosed to this jury. As a result, when the the trial court granted the interviews, it had a reasonable concern, supported by credible information, that the jury’s verdict had been influenced by extrinsic factual matters disclosed in the jury room.
Although the interviews with the jurors contain conflicting information, there is substantial competent evidence that one juror did inform some of the other jurors that the last trial resulted in a $600,-000 verdict. At least some of the jurors believed that their verdict awarded 10% of that amount, as well as the amounts contained in the verdict. Although the interviews included questions concerning the jury’s misunderstanding of the applicable law, an issue that inheres within the verdict, we conclude that the juror’s disclosure of the prior verdict and its significance to the jury’s verdict is an “overt prejudicial act” as described in Maler and that it authorizes a new trial. Cf. State v. Gibson, 585 So.2d 285 (Fla.1991) (second jury for death penalty phase need not be “polled” concerning their use of the knowledge of the prior death penalty sentence).
The trial court also granted a new trial because it “erroneously” gave a jury instruction on justifiable use of force. This court’s prior opinion suggested that an instruction should be given in this case on justifiable force in making an arrest under section 776.05, Florida Statutes (1985). If the evidence at a subsequent trial does not support a version of the incident involving efforts to make a lawful arrest, we do not mandate the use of such an instruction. We would note, however, that other concepts of justifiable force described in chapter 776 may also be material in any subsequent trial.
Affirmed.
SCHEB, A.C.J., and LEHAN, J., concur.