EVANDER, J.
The State seeks certiorari review of a post-trial order granting a juror interview. Because the trial court’s order constituted a departure from the essential requirements of law, we grant the petition.
Respondent, Angel Monserrate-Jacobs, was charged with DUI-manslaughter. At trial, the State introduced a recorded statement given by Respondent to the investigating officer shortly after the fatal car crash at issue. Respondent admitted that he was tired and driving in excess of the speed limit at the time of the car crash, but denied that he was intoxicated.
The State also presented evidence that blood samples taken from Respondent on the night in question reflected that he had a blood alcohol level of .178 (grams of alcohol per 100 milliliters of blood). The blood kit utilized, as well as the vials of Respondent’s blood, were entered into evidence.
Respondent argued two theories of defense to the jury. First, Respondent’s counsel argued that the tape recording of Respondent “was not reflective of someone with a .178 blood alcohol [level] and, in fact, was disjunctive from the evidence.” Second, it was Respondent’s contention that the blood draw must somehow have been contaminated either through defective outdated tubes and/or an expired blood kit. Respondent presented expert testimony in support of this second theory of defense. Neither the State’s toxicologist, nor the defense expert, testified as to the blood kit’s expiration date.
During its deliberations, the jury made two requests of the court: (1) to rehear *296 Respondent’s recorded statement, and (2) to view the blood kit. The trial court, without objection, granted both requests. The replaying of the recorded interview and the jury’s view of the blood kit both occurred in open court — in the presence of Respondent, counsel, and the trial judge.
With regard to the jury’s view of the blood kit, the trial court made the following findings:
Four jurors went to the area where the blood kit was and viewed the kit; two jurors voluntarily decided not to join their fellow jurors where the blood kit was.
While near the blood kit, one juror (Heape) suggested that another juror (Lapoint) exclusively handle the kit.
The juror handling the blood kit (La-point) allowed the other three jurors in that vicinity to see whatever they wanted to see about the kit, including both the vials and the box. In fact, at one point, a juror did ask Lapoint to turn the box to view the labels on the top of the box.
After the brief view of the blood kit, the jury returned to continue their deliberations.
Neither party lodged an objection to the viewing of the blood kit, nor the manner in which the jury viewed the kit, prior to the jury returning to render their verdict.
After the jury found Respondent guilty of the charged offense, Respondent filed a motion for juror interview. In his motion, Respondent alleged that juror Lapoint, a nurse, had acted improperly by “in essence becoming a witness in the case and inappropriately influencing other jurors and/or providing information in the jury room that was not delivered during the course of the trial.” Specifically, it was Respondent’s belief that juror Lapoint had observed an expiration date on the blood kit and informed the other jurors of her findings. After hearing argument, the trial court granted Respondent’s request to interview juror Lapoint, but limited the inquiry to whether she had observed an expiration date on the blood kit and, if so, whether she had given the other jurors any explanation about the expiration date on the blood kit that was based on her personal training and experience in the medical field.
Florida courts have long recognized the need to prohibit litigants or the public from invading the privacy of jury deliberations. Pesci v. Maistrellis, 672 So.2d 583, 585 (Fla. 2d DCA 1996). In recognition of this sound public policy, Florida courts have traditionally utilized the writ of cer-tiorari to review the propriety of a trial court order granting a motion for juror interview, so as to ensure that such an order will not result in a breach of the sanctity of jury deliberations. Id.
While Florida Rule of Criminal Procedure 3.575 authorizes a party to seek an order permitting a juror interview where there is “reason to believe that the verdict may be subject to legal challenge,” the motion must set forth allegations that are not merely speculative, conclusory, or concern matters that inhere in the verdict itself. Orange Cnty. v. Fuller, 502 So.2d 1364 (Fla. 5th DCA 1987).
In the instant case, we conclude that Respondent’s allegations are simply too speculative to permit a juror interview. Not only did Respondent fail to allege facts that would support his supposition that juror Lapoint had somehow ascertained the expiration date for the blood kit, but he also failed to allege that there was, in fact, an expiration date visible on the kit.
Furthermore, even if we were to assume that it was somehow improper for a juror *297 to make an observation regarding an exhibit admitted into evidence that was not made or discussed by any witness or attorney, we believe Respondent’s objection was untimely. The jury’s inspection of the blood kit took place in the presence of Respondent, counsel, and the trial judge. No objection was made to the jury viewing the blood kit, nor the manner in which it did so, until after the jury rendered its verdict. Respondent should have brought his claim of alleged jury misconduct to the court’s attention at the time it was observed rather than waiting until after an unsatisfactory verdict. See Hampton v. Kennard, 633 So.2d 535, 536 (Fla. 2d DCA 1994).
We grant the State’s petition and quash the order permitting a juror interview.
PETITION GRANTED; ORDER QUASHED.
LAWSON and COHEN, JJ„ concur.